## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

STINGRAY MUSIC USA, INC.,

      Plaintiff,

vs.

uCAST LLC f/k/a QELLO, LLC

      Defendants,

CIVIL ACTION NO.:

**COMPLAINT**

Plaintiff, STINGRAY MUSIC USA, INC., (hereinafter "STINGRAY" or "Plaintiff") by and through their counsel, sues uCAST LLC f/k/a QELLO, LLC (hereinafter "uCAST" or "Defendant"), (together known as "Parties") and alleges as follows:

### NATURE OF ACTION

1.    This is a breach of contract action. On January 3, 2018, STINGRAY entered into an Asset Purchase Agreement ("APA") with Defendants to purchase the business of *Qello Concerts* consisting of substantially all the assets necessary for STINGRAY to operate *Qello Concerts* from Defendant. *Qello Concerts* is a "streaming service with the world's largest collection of on-demand full-length concerts and music documentaries, live music events and original programming." *See* Exhibit 1.

2.    On that same day the Parties also executed other documents, including a Transition Services Agreement ("TSA") and a Software License Agreement ("SLA") (together known as "Transaction Documents") along with other documents which were required to reasonably complete the assignment, transfer and conveyance of the assets to STINGRAY, and to functionally support and operate the *Qello Concerts* business. *See* Exhibit 2.

3.     The TSA designated a specific subcontractor, X3EAM LLC, Bulgaria (hereafter "X3EAM"), to perform any or all of Defendants' support services obligations under the TSA and requires Defendants to pay for X3EAM's services.

4.     However, at some time prior to April 2019, Defendant stopped paying X3EAM and refused to perform all its obligations under both the APA and TSA.

5.     Faced with the choice of losing the ability to operate the purchased assets, STINGRAY has been forced to step in and pay X3EAM in order to continue to operate the *Qello Concerts* business.

6.     STINGRAY notified Defendant of the breach and provided Defendant with an opportunity to cure the breach.

7.     To date, Defendant has failed to cure the breach.

## PARTIES

8.     Plaintiff STINGRAY MUSIC USA, INC., is a company incorporated under the laws of the State of Delaware with its principal place of business in Montreal, Quebec.

9.     Defendant uCAST LLC f/k/a QELLO, LLC, is a limited liability company formed under the laws of the State of Delaware.   Upon information and belief all members of the LLC are not citizens of the State of Delaware.  Upon information and belief, uCAST has, at all times material hereto, done business in this District.

## JURISDICTION AND VENUE

10.     The Court has subject matter jurisdiction over this action under 28 U.S.C. §§1332(a)(1). There is complete diversity among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

ACTIVE: S27096/397663:12646112_1

11.     The Court has personal jurisdiction over the parties. The agreements at issue in this litigation contain an "Applicable Law; Submission to Jurisdiction" section whereby the parties to the agreement have submitted to the jurisdiction of any court in or for the State of New York. (§1.10 APA §1.9 TSA)

12.     Venue is proper in this District under 28 U.S.C. §1391. The agreements contain a New York choice of venue provision.

### SUBSTANTIVE ALLEGATIONS

13.     On January 3, 2018, STINGRAY and Defendant executed Transaction Documents, including the APA and TSA, in furtherance of the sale of the *Qello Concerts* business from Defendant to STINGRAY.

14.     During the negotiation of the sale the parties understood and agreed that the IT platform necessary to deliver the *Qello Concerts* service would not form part of the purchased assets.  However, it was obvious to both parties that the purchased assets would need ongoing technical service necessary to operate the *Qello Concerts* business.

15.     As a result, Section 2.7.1 of the APA references the vital nature of the TSA and states the following:

> On the Closing Date, Purchaser and Sellers shall enter into the Transitional Services Agreement. **The Parties hereby acknowledge that the entering into of the Transitional Services Agreement and the fulfillment of Sellers' obligations thereunder is a fundamental condition precedent and condition subsequent to the purchase by Purchaser of the Purchased Business without which Purchaser would not have entered into this Agreement. Any breach by Sellers of the Transitional Services Agreement would cause irreparable harm to the Purchased Business.** Sellers hereby agree that in the event of a breach by Sellers of the Transitional Services Agreement that is not cured within five (5) days' notice from Purchaser to Sellers, Purchaser shall be entitled to, at Purchaser's discretion: (i) demand specific performance of the terms thereof in addition to any other remedy to which Purchaser is

ACTIVE: S27096/397663:12646112_1

entitled at law or in equity; or (ii) **demand payment from Sellers, or any individual Seller, in the amount of Three Million Dollars ($3,000,000), as liquidated damages, solely to the extent Seller breaches (subject to any applicable cure periods) the Transitional Services Agreement during the Initial Term (as defined in the Transitional Services Agreement) or any Renewal Term (as defined in the Transitional Services Agreement), and such breach arises out of, relates to or is in connection with a cessation of the Services (as defined in the Transitional Services Agreement) thereunder**; provided, that Sellers shall have no obligation to Purchaser under this Section 2.7.1 to the extent such cessation of the Services arises out of, relates to or is in connection with Force Majeure.

[Emphasis added]

16.     The TSA was executed by both Parties and required Defendant to provide essential services on an ongoing basis.

17.     Section 2.3 of the TSA defines the scope of services to be provided during the Term of that agreement.[1]

### 2.3 <u>Services Standard</u>

The Sellers will provide the Services in substantially the same manner and with at least the same degree of care and diligence as such Services had been provided with respect to the Purchased Business immediately before the date hereof (which Services standard shall not, under any circumstances, be less than modern standards that are commensurate with best commercial practices). The Sellers will provide the Services in compliance with all applicable Laws and the terms of the License and all applicable License Agreements and Contracts. The Sellers will ensure that they have at all times such number of adequately qualified employees and personnel with the necessary experience and training as may be required to perform the Services in accordance with their obligations under this Agreement.

---

[1] The "Term" of the agreement is defined in Article 4 §4.1 of the TSA.

ACTIVE: S27096/397663:12646112_1

18.     Section 3.2 of the TSA designates a specific subcontractor to perform any and all obligations of Defendants under the TSA and states as follows:

**3.2 <u>Subcontractors</u>**

> Subject to the prior written consent of the Purchaser, which consent may be withheld in its sole and absolute discretion, the Sellers may hire or engage one or more subcontractors to perform any or all of their obligations under this Agreement, provided that the Sellers will in all cases, subject to the terms herein (including Section 5.1), remain primarily responsible for all obligations undertaken by the Sellers pursuant to this Agreement and will ensure that any subcontractors so engaged comply with all the obligations and terms and conditions hereunder. **The Purchaser hereby consents to the Sellers' engagement of X3EAM LTD, an entity formed under the laws of Bulgaria, as a subcontractor in connection with the Sellers' obligations hereunder**.

[Emphasis added]

19.     On or about April 18, 2019, STINGRAY received a letter from X3EAM, confirming that X3EAM had terminated its business relationship with Defendant as a consequence of "protracted delinquency in payment for services". *See* Exhibit 3.

20.     X3EAM confirmed to STINGRAY that: "[t]he reason for terminating our business relations to Q Media was due to repetitive and permanent breaches of their payment obligations. As such X3EAM is no longer able to financially meet its obligations with creditors and employees due to this level of delinquency by uCAST."

21.     X3EAM was the subcontractor specifically designated by the parties in Section 3.2 of the TSA to perform all the obligations of Defendant in connection with the TSA.

22.     X3EAM's termination of the business relationship for lack of payment constitutes a material breach of the TSA and the APA by Defendant.

23.     Defendant's material breach has had a material impact on the delivery and the monetization of the Purchased Business.

24.     On April 22, 2019, STINGRAY provided notice to Defendants of the termination of the TSA for cause under Section 4.2(d) of the TSA. *See* Exhibit 4.

25.     As a consequence of Defendant's material breach of both the APA and TSA and the irreparable harm incurred by STINGRAY, STINGRAY demanded payment of Three Million Dollars ($3,000,000) as liquidated damages in accordance with the terms of Section 2.7.1 of the APA.

26.     As of the filing of this action, Defendant has failed to cure the breach or provide the stipulated liquidated damages payment to STINGRAY.

27.     STINGRAY has fulfilled all of its obligations under all the Agreements.

28.     STINGRAY has engaged undersigned counsel to bring this action and agreed to pay them a reasonable attorney's fee to do so, for which Defendant is liable pursuant to the APA.

## FIRST CLAIM FOR RELIEF
### (Breach of APA by Defendant)

29.     Plaintiff re-alleges paragraphs 1-28.

30.     On January 3, 2018, STINGRAY entered into the APA with Defendant.

31.     STINGRAY has performed its obligations under the APA.

32.     Defendant has breached §2.7.1 of the APA by failing to comply with all Defendants' material obligations under the TSA.

33.     Fulfillment of Defendants' obligations under the TSA was a fundamental condition precedent and condition subsequent to the purchase of the *Qello Concerts* business without which STINGRAY would have never entered into the APA.

## **SECOND CLAIM FOR RELIEF**
### **(Breach of TSA by Defendant)**

34.     Plaintiff re-alleges paragraphs 1-28.

35.     On January 3, 2018, STINGRAY entered into the TSA with Defendant.

36.     STINGRAY has performed its obligations under the TSA.

37.     Defendant has breached the TSA by failing to pay X3EAM, the subcontractor designated to perform all of Defendants obligations under §3.2 of the TSA.

ACTIVE: S27096/397663:12646112_1

## PRAYER FOR RELIEF

WHEREFORE, STINGRAY respectfully requests the Court to enter judgment as follows:

A.      On the First Claim for Breach of Contract, damages in an amount to be determined at trial, but not less than $3,000,000 plus pre-judgment and post-judgment interest allowed by law;

B.      On the Second Claim for Breach of Contract, damages in an amount to be determined at trial, plus pre-judgment and post-judgment interest allowed by law.

C.      Attorneys' fees and costs; and

D.      Further relief as the Court may deem just and proper.

Dated: August 9th, 2019

                                        **BECKER & POLIAKOFF, P.A.**

                                        By:  */s/ Gary C. Rosen*
                                             Gary C. Rosen Bar No. 5581616
                                             Jack S. Kallus Bar No. 434050
                                             1 East Broward Boulevard
                                             Suite 1800
                                             Fort Lauderdale, Florida 33301
                                             Telephone: 954.965.5049
                                             Facsimile: 954.985.4176
                                             Email: GRosen@beckerlawyers.com
                                             Email: JKallus@beckerlawyers.com
                                             *Attorney for Plaintiff Stingray Music USA*

ACTIVE: S27096/397663:12646112_1