UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X
STINGRAY MUSIC USA, INC.,                      :
                                                                         :
                                     Plaintiff,          :    **ORDER AWARDING**
          -against-                                      :    **SANCTIONS AND REGULATING**
                                                                         :    **PROCEEDINGS**
uCAST LLC f/k/a QELLO, LLC,                 :
                                                                         :    19 Civ. 7473 (AKH)
                                     Defendant.       :
---------------------------------------------------------------- X
ALVIN K. HELLERSTEIN, U.S.D.J.:

   Since late April 2020, I have twice sanctioned Defendant for failure to comply with discovery obligations and multiple directives of this Court. *See* ECF No. 37, 39. The most recent order awarding sanctions did not mince words: I warned Defendant that its behavior was "unacceptable and sanctionable." ECF No. 39, at 2. In addition to imposing monetary sanctions, both of my prior orders——recognizing Defendant's ongoing failure to designate a witness under Federal Rule of Civil Procedure 30(b)(6)——outlined the following procedure:

> Plaintiff will make a submission identifying all factual propositions that Plaintiff wishes to have the opportunity to prove by way of a Federal Rule of Civil Procedure 30(b)(6) witness. Defendant will have three weeks from the date of Plaintiff's submission to produce a Rule 30(b)(6) [witness] or represent to the Court that no suitable witness exists.

ECF No. 37, at 1. In the second of the two orders awarding sanctions against Defendant, I added that "[i]f no such witness exists, those matters will be deemed proven unless … controverted by documentary materials in the record." ECF No. 39, at 3. Plaintiff submitted its proposed factual propositions on May 20, 2020. *See* ECF No. 43-1. Accordingly, Defendant's response was due on or before June 11, 2020.

   Now before the Court is Plaintiff's third motion for sanctions, on the grounds that June 11 came and went, and Defendant "did not designate a 30(B)(6) witness" or represent to the

1

Court that "no suitable witness existed." ECF No. 43, at 4. Plaintiff notes that on June 17, 2020, nearly a full week after the deadline had passed, Plaintiff "requested an update from Defendant," and that in response, on June 19, Defendant's counsel stated that (a) Defendant did not provide a 30(b)(6) witness, and (b) counsel intended to withdraw. *See id*. On June 22, defense counsel did indeed move to withdraw, citing Defendant's "continued lack of assistance and non-cooperation" with the defense of its case. ECF No. 41. Later in the day on June 22, after filing the motion to withdraw but before I had granted the motion,[1] defense counsel notified Plaintiff in an email that the "[Defendant] finally designated a 30(b)(6) witness." ECF No. 43-3. Plaintiff followed up to ask defense counsel whom to contact for purposes of scheduling the deposition, and has not yet received any response. *See* ECF No. 43 at 5.

Plaintiff's third motion for sanctions is granted. As I made clear in my last order, the Supreme Court and Second Circuit have repeatedly approved of sanctions as a necessary and prudent tool for "'dealing with a party which flouts court orders.'" ECF No. 39 (quoting *Fonar Corp. v. Magnetic Plus, Inc.*, 175 F.R.D. 53, 55 (S.D.N.Y. 1997)). I limited the latest round of sanctions to monetary penalties, but indicated that more punitive measures were available, *see, e.g.*, *id*. at 2 n.1 (noting that imposition of an adverse inference or default judgment may be in order), and expressly warned that if Defendant could not timely identify a 30(b)(6) witness, the factual matters asserted by Plaintiff "will be deemed proven unless squarely controverted by documentary materials in the record." ECF No. 39, at 3. Despite my ordering thousands of dollars in sanctions and my unequivocal chastisement of Defendant's behavior, Defendant has flagrantly ignored this Court's order. It is true that Defendant has now belatedly identified a witness to testify pursuant to Rule 30(b)(6), but by the time Defendant finds new counsel (if

---

[1] I granted the motion to withdraw shortly after it was filed, and instructed Defendant that it had 30 days to procure new counsel. *See* ECF No. 42.

ever) and by the time this counsel gets up to speed, a deposition on this issue may not occur for months. I see no reason to further prejudicially delay Plaintiff's advancement of this litigation.

Accordingly, I make two rulings: First, Defendant shall pay $5,000 to Plaintiff to cover the costs of bringing this motion and in recognition of Defendant's unacceptable behavior. Second, the factual findings proposed by Plaintiff are hereby deemed to be proven, unless later directly controverted by documentary evidence. These factual findings are as follows:

> 1. The negotiations, drafts, and terms and conditions of the Asset Purchase Agreement, Transition Services Agreement, and Software License Agreement ("Transaction Documents), as referenced in the underlying Complaint at ¶ 1-2.
>
>> a. Negotiations with Defendant to purchase *Qello Concerts* including but not limited to representations and warranties regarding relationship with subcontractor, X3EAM (a/k/a "Nextstream LLC")
>>
>>> 1. That uCAST (or "Defendant") never disclosed at any point in time during the negotiations, drafting and sale of *Qello Concerts* to Stingray that X3EAM was employed on other projects.
>>>
>>> 2. That uCAST never disclosed at any point in time during the negotiations, drafting and sale of *Qello Concerts* to Stingray its unilateral plan to renegotiate fees with X3EAM which included not paying for X3EAM services for a period of time.
>>>
>>> 3. That uCAST never disclosed at any point in time during the negotiations, drafting and sale of *Qello Concerts* or any time after the sale of *Qello Concerts* to Stingray its attempts to renegotiate payments with X3EAM
>>
>> b. Earnout details (period and shortfall)
>>
>>> 1. That uCAST negotiated terms in the Transaction Documents relating to an Earnout but after the sale of *Qello Concerts* was unable to properly calculate and apply these figures leading to confusion about amounts owed by Stingray to uCAST.
>>
>> c. Holdback details
>>
>>> 1. That uCAST negotiated terms in the Transaction Documents relating to Holdback but after the sale of *Qello Concerts* was unable to properly understand the details of the terms of the sale.

    d. Reserve balance details

        1. That uCAST negotiated terms in the Transaction Documents relating to a Reserve balance but after the sale of *Qello Concerts* was unable to properly understand the details of the terms of the sale.

    e. Deferred Revenue details

        1. That uCAST negotiated terms in the Transaction Documents relating to Deferred Revenue but after the sale of *Qello Concerts* was unable to properly calculate and apply these figures leading to confusion on any amounts owed by Stingray to uCAST.

    f. Gift card credit details

        1. That uCAST negotiated terms with Stingray relating to Gift Card credits but after the sale of *Qello Concerts* was unable to properly calculate and apply these figures leading to confusion on any amounts owed by Stingray to uCAST.

    g. None of the Transaction Documents included a "pay when paid" clause

    h. uCAST was independently responsible for paying X3EAM for services rendered by X3EAM on behalf of uCAST.

2. uCAST's transfer, sale, or otherwise assignment of *Qello Concerts* to STINGRAY, as defined in the Transaction Documents.

    a. That uCAST failed to transfer the complete asset to Stingray as required by the Transaction Documents.

    b. That uCAST failed to transfer the complete source code for asset to Iron Mountain as required by the Transaction Document and an Escrow Agreement.

3. Contracts, agreements, and scope of engagement between uCAST and X3EAM, LLC (a/k/a "Nextream LLC").

    a. That Defendant entered into a consulting agreement on or about July 1, 2011 with X3EAM.

    b. That Defendant entered into a modified consulting agreement on or about March 1, 2012 with X3EAM.

  c. That Defendant entered into a modification agreement on or about September 26, 2018 with X3EAM to pay past due invoices pursuant to a pay schedule.

  d. That Defendant failed to make the first payment to X3EAM on the date required by the modification agreement.

  e. That Defendant continuously failed to pay its outstanding debt to X3EAM which jeopardized the service provided to the asset Stingray purchased from Defendant.

4. All financial transactions between uCAST and X3EAM.

  a. That Defendant had a good payment history with X3EAM between July 11 and January 2017.

  b. That around mid-2017 Defendant began a consistent and chronic failure to pay invoices to X3EAM.

    1. That on 12/31/17 uCAST owed X3EAM $302,100.00 for past due fees.

    2. That on 1/29/18 uCAST owed X3EAM $97,100.00 for past due fees.

    3. That on 2/2618 uCAST owed X3EAM $184,290 for past due fees.

    4. That on 4/2/18 uCAST owed X3EAM $251,720.00 for past due fees.

    5. That on 4/13/18 uCAST owed X3EAM $339,020.00 for past due fees.

    6. That on 5/8/18 uCAST owed X3EAM $383,060.00 for past due fees.

    7. That on 6/15/18 uCAST owed X3EAM $425,150.00 for past due fees.

    8. That on 7/13/18 uCAST owed X3EAM $532,440.00 for past due fees.

    9. That on 7/17/18 uCAST owed X3EAM $649,730.00 for past due fees.

> 10. That on 8/16/18 uCAST owed X3EAM $738,730.00 for past due fees.
>
> 11. That on 8/22/18 uCAST owed X3EAM $828,730.00 for past due fees.
>
> 12. That on 8/29/18 uCAST owed X3EAM $888,730.00 for past due fees.
>
> 13. That on 9/12/18 uCAST owed X3EAM $934,210.00 for past due fees.
>
> 14. That on 9/28/18 uCAST owed X3EAM $934,210.00 for past due fees.
>
> 15. That on 10/23/18 uCAST owed X3EAM $814,210.00 for past due fees.
>
> 16. That on 11/21/18 uCAST owed X3EAM $694,210.00 for past due fees.
>
> 17. That on 12/14/18 uCAST owed X3EAM $574,210.00 for past due fees.
>
> 18. That on 1/29/19 uCAST owed X3EAM $454,210.00 for past due fees.
>
> 19. That on 2/21/19 uCAST owed X3EAM $554,210.00 for past due fees.
>
> 20. That on or around 3/2019 uCAST owed X3EAM $884,210.00 for past due fees.

c. That Defendant received multiple correspondences from X3EAM and its counsel regarding the above chronic payment issue.

d. That Defendant intentionally failed to notify Stingray about payment issues with X3EAM.

e. That Defendant knew it was in significant arrears to X3EAM.

f. That Defendant knew its debt to X3EAM put Stingray at risk of suffering an interruption of service had X3EAM terminated services for Defendant's chronic breaches.

5. All instances of uCAST receiving notices of default from X3EAM, in connection with the Transaction Documents.

>    a. That on or about April 22, 2019, Defendant received a notice of claim from Stingray.
>
>    b. That on or about May 27, 2019, Defendant received an escrow demand letter from Stingray.
>
>    c. That Defendant received direct communication from Iron Mountain regarding the escrow agreement and intentionally failed to respond or object to the release of the escrow information.

6. All damages incurred by uCAST as alleged in the Counterclaim.

>    a. That uCAST has only been damaged (if at all) based on its own intentional conduct and breaches.
>
>    b. That uCAST's Counterclaim lacks merit and is merely a means to delay and multiply the current proceedings.
>
>    c. That uCAST does not continue to accrue damages at $40,000 a month against Stingray.

7. All facts alleged in X3EAM LTD's Amended Complaint and uCAST's Amended Counterclaim and Affirmative Defenses in case style *X3EAM LTD et al. v. Qello, LLC et al.*, Case No.: 1:19-cv-07668-MKV pending in the Southern District of New York.

>    a. That uCAST Falsely claims in its Amended Counterclaim and Affirmative Defenses in case style *X3EAM LTD et al. v. Qello, LLC et al.*, Case No.:1:19-cv-07668-MKV that X3EAM engaged in wrongdoing and negligent conduct.
>
>    b. That uCAST falsely claims in its Amended Counterclaim and Affirmative Defenses in case style *X3EAM LTD et al. v. Qello, LLC et al.*, Case No.:1:19-cv-07668-MKV that X3EAM breached an implied covenant of good faith and fair dealing.
>
>    c. That uCAST falsely claims in its Amended Counterclaim and Affirmative Defenses in case style *X3EAM LTD et al. v. Qello, LLC et al.*, Case No.:1:19-cv-07668-MKV [] that X3EAM tort[i]ously interfered with contracts and caused irreparable harm.

>    d. That the allegations of chronic deficient payments from mid-2017 through march 2019 in the Amended Complaint by X3EAM LTD, Case No.:1:19-cv-07668-MKV against uCAST are true.
>
>    e. That because of uCAST's lack of payment to X3EAM LTD, Stingray was forced to enter into a direct contract with X3EAM LTD to stave off service interruption.
>
> 8. uCAST's document retention policies and procedures.
>
>    a. That because of uCAST's failure to make payments to X3EAM for services rendered from mid-2017 onward, uCAST reasonably could have anticipated a legal cause of action arising from its conduct.  uCAST could have reasonably anticipated legal issues arising from both X3EAM and Stingray.  uCAST had a duty to preserve documents and electronic data from at least January 2017 through the date of this litigation.  uCAST intentionally failed to take any measures to preserve electronic data and documents which would have been relevant to this litigation.

ECF No. 43-1, at 3-6.

In sum, Defendant's motion is granted.  The foregoing facts are deemed proven. And within three weeks of the issuance of this order, Defendant shall pay to Plaintiff $5,000 or else face further sanctions.  The Clerk is instructed to close the open motion (ECF No. 43).

       SO ORDERED.

Dated:      June 29, 2020                   _____/s/_____
           New York, New York               ALVIN K. HELLERSTEIN
                                                     United States District Judge